13-4834-cv
*Cent. States, Se. & Sw Areas Health & Welfare Fund v. Gerber Life Ins. Co.*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

No. 13-4834-cv

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Fund, ARTHUR H. BUNTE, a Trustee thereof, in his representative capacity,
*Plaintiffs-Appellants*,

*v.*

GERBER LIFE INSURANCE COMPANY, ADMINISTRATIVE CONCEPTS, INC.,
*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of New York.
No. 13 Civ. 2994 — Nelson S. Román *Judge*.

_____

ARGUED: JUNE 18, 2014
DECIDED: NOVEMBER 14, 2014

_____

Before: CALABRESI, B.D. PARKER, and LYNCH, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, *J.*). The Court held that plaintiffs-appellants' claims were legal and not for "appropriate equitable relief" under § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). We agree that the claims are legal claims and accordingly AFFIRM the judgment of the district court.

————

> TIMOTHY C. REUTER, (Emily E. Gleason, *on the brief*), Central States Funds, Rosemont, Illinois, *for Plaintiffs-Appellants*.
>
> RAYMOND KRESGE, Cozen O'Connor, Philadelphia, Pennsylvania (Alicia G. Curran, Cozen O'Connor, Dallas, Texas, Melissa Brill, Cozen O'Connor, New York, New York, *on the brief*), *for Defendants-Appellees*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

In this appeal from a judgment of the United States District Court for the Southern District of New York (Román, *Judge*) we consider whether plaintiffs-appellants' claims are ones for "appropriate equitable relief" under § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), or whether the claims are for legal relief which is not available under that section. We conclude that the claims are ones for legal relief and thus affirm the judgment of the district court. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002).

2

# BACKGROUND

Central States, Southeast and Southwest Areas Health and Welfare Fund is an ERISA employee welfare benefit plan that provides health insurance to participating Teamsters and their dependents. Gerber Life Insurance Company issued accident insurance policies that covered, among other things, scholastic sports-related injuries. Administrative Concepts, Inc. is the claims processor for the Gerber policies.

The claims at issue arose from injuries suffered by several students during scholastic athletic activities. The students were insured by Central States as dependents of plan participants, and were also directly insured by separate accident policies written by Gerber. The central controversy in this litigation is which of the two policies afforded primary and which afforded secondary coverage for the injuries. The Central States policy contained a Coordination of Benefits formula intended to determine how its benefits would interact with other insurance coverage. Under that formula, if a covered person is insured by Central States indirectly as a dependent, but is insured directly by another policy (such as the Gerber policy), the Central States policy provides secondary coverage and the other policy provides primary coverage.

The Gerber policy, on the other hand, purportedly provided coverage only in excess of whatever was paid by other medical insurance coverage. The relevant portion of the policy stated:

> The Company will pay Reasonable Expenses that are not recoverable from any Other Plan. The Company will determine the amount of benefits provided by Other Plans without reference to any coordination of benefits; non duplication of benefits, or similar provisions. . . . This Blanket Student Accident Insurance is secondary to all other policies.

Joint App'x at 167.

3

Although Central States considered its coverage to be secondary, it nevertheless paid the injured students' claims as an accommodation to them and their families in order to avoid delays and undue administrative burdens to beneficiaries who undisputedly were entitled to have their claims covered by medical insurance. After it paid the claims, Central States sought reimbursement from Gerber, whom it considered the primary insurance provider. Gerber refused to pay, taking the position that under its coordination of benefits provision, its policies provided only excess, secondary coverage. Central States then brought this lawsuit to recover the amounts it had paid on the claims.

Central States' complaint alleged various claims for declaratory judgment and injunctive relief pursuant to federal common law and ERISA § 502(a)(3). Claims I and II sought to establish Gerber's obligation to pay future and past claims. Claim III sought restitution, and Claim IV sought the imposition of an equitable lien and a constructive trust to secure reimbursement for the claims Central States had paid.

Gerber moved pursuant to Rule 12(b)(6) to dismiss the complaint on the grounds that, notwithstanding the equitable labels placed on the claims, Central States was actually seeking legal relief that was not available under § 502(a)(3). Gerber also contended that ERISA preempted Gerber's federal common law claims.

The district court granted Gerber's motion. The court reasoned that Central States' claims were not equitable in nature and that the relief sought was, therefore, unavailable under ERISA. The court entered judgment and Central States appealed. *See Cent. States, Se. & Sw. Area Health & Welfare Fund v. Gerber Life Ins. Co.*, 984 F. Supp. 2d 246 (S.D.N.Y. 2013). We review de novo a district court's dismissal of a complaint for failure to state a claim, taking the plausible factual allegations of the complaint to be true and drawing all reasonable inferences in the plaintiff's favor. *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

## DISCUSSION

The Supreme Court has emphasized in no uncertain terms that ERISA is a "comprehensive and reticulated statute" that includes a "carefully crafted and detailed enforcement scheme" that courts are not at liberty to alter. *Great-West*, 534 U.S. at 209. The civil remedies available to ERISA plan fiduciaries are set forth in § 502(a)(3), which provides that a fiduciary may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3) (emphasis added).

The resolution of this appeal turns principally on the Supreme Court's discussion in *Great-West Life & Annuity Insurance Co. v. Knudson* of what relief is equitable in nature and what relief is legal in nature under § 502(a)(3). It is undisputed that if the relief sought by Central States is legal relief, Central States cannot succeed under § 502(a)(3). In *Great-West*, an ERISA welfare benefit plan paid the medical expenses of a beneficiary who suffered injuries in a car accident. When the beneficiary later settled a tort suit arising from the accident and received the settlement proceeds in a special needs trust, the ERISA plan sued the beneficiary under a term of the Plan which allowed it "to recover from the [beneficiary] any payment for benefits paid by the Plan that the beneficiary is entitled to recover from a third party." 534 U.S. at 207. The plan, asserting claims for injunctive relief and restitution under § 502(a)(3), sought to recover the payments. The beneficiary defended on the ground that the plan sought legal, not equitable, relief.

The beneficiary prevailed. The Supreme Court held that the "equitable" label applied to a claim was not determinative, and that courts must examine "the basis for the plaintiff's claim and the nature of the underlying remedies

5

sought." *Id.* at 213. In dismissing the plan's claim for injunctive relief, the Supreme Court explained that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210-11. Turning to the claim for restitution, the Court explained that "[i]n the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." *Id.* at 212. The Court went on to clarify the differences between claims for equitable and legal restitution:

> In cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money . . . . Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).
>
> In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be *traced to particular funds or property in the defendant's possession*. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.

*Id.* at 213 (last emphasis added). The Court concluded that the plan sought legal relief because the plan could not satisfy the tracing requirement. The Court reasoned that because the settlement funds were held by a special needs trust, not the beneficiary, the money that the plan was seeking could not be "traced to particular funds or property in *the defendant's* possession." *Id.* Instead, the plan sought only to "recover[] money to pay for some benefit the defendant had

6

received from [it]." *Id.* We conclude that Central States' claims fall within this description of legal relief.

## I. Declaratory Judgment Claims

As noted, Central States alleged two claims (Claims I and II) styled as declaratory judgment claims, one for unpaid and future expenses and one for the past expenses incurred by the insureds.[1] Central States asserted that subject matter jurisdiction existed for these claims under federal common law and under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Joint App'x at 15 ¶ 17. Central States did not allege that these claims arose under § 502(a)(3), or that ERISA's jurisdictional provision, 29 U.S.C. § 1132(e), otherwise provided a basis for the claim. Both claims were properly dismissed.

Following *Great-West*, we are not free to fill in unwritten gaps in ERISA's civil remedies by reading into the statute additional causes of action derived from federal common law. As the Supreme Court has emphasized, ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive. *Great-West*, 534 U.S. at 209; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). Accordingly, we hold that Central States' declaratory judgment claims for future and past damages were properly dismissed.

Even though Central States labeled Claims I and II as ones for declaratory and injunctive relief, the claims seek money damages. They seek a declaration that Gerber has primary responsibility for paying the claimants' future and past

---

[1] The first claim seeks a declaration that Gerber is liable "to pay unpaid and future covered medical expenses relating to the accidental injuries sustained by the [Common Insureds]," and seeks an injunction preventing Gerber from violating Central States' coordination of benefits provisions. We have concerns as to whether Central States has sufficiently alleged that any such claims exist, or that there is any reasonable likelihood of future claims from the Common Insureds. We do not address this issue because it was mentioned only in passing and not adequately discussed in the parties' briefs.

expenses, and injunctive "relief" compelling the payments. This approach, however, cannot survive *Great-West*, in which the Court noted that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." 534 U.S. at 210-11. The Court admonished that "[a]lmost invariably . . . suits seeking (whether by judgment, *injunction, or declaration*) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 210 (emphasis added). As this expansive language in *Great-West* makes clear, Central States' claims are, in essence, legal ones for money damages even though they are covered by an equitable label. Litigants are not at liberty to plead around ERISA's limitations by resorting to common law or declaratory judgment claims. Accordingly, Claims I and II were properly dismissed.

## II. Restitution and Equitable Lien/Constructive Trust Claims

Central States makes two further claims. Claim III seeks restitution from Gerber of the funds paid out by Central States. Claim IV seeks to impose an equitable lien or constructive trust on those funds. Both claims are purportedly brought under § 502(a)(3) and both fail for essentially the same reason: they seek legal relief. As noted above, the Supreme Court has made clear that the equitable label applied to a claim is not determinative. Instead, to determine whether the claims are viable, courts must examine the gravamen of the claim and underlying nature of the remedies sought. *Id.* at 213.

As previously noted, *Great-West* held that the key factor in that examination is whether a claimant was seeking restitution from a defendant's general funds, in which case the claim was legal, or whether a claimant was seeking to recover money that could be traced to a particular fund held by a defendant, in which case the claim was equitable. Central States acknowledges the existence of that tracing requirement but contends that cases decided after

Great-West have eliminated it. Our examination of those cases indicates that while this tracing requirement may have been somewhat loosened, it is still very much in force.

The relief sought by Central States is not equitable because it does not assert title or right to possession of particular property, but simply asserts a claim against Gerber's general assets. For this reason, Central States cannot "trac[e]" the money it claims to "particular funds or property in [Gerber's] possession," but rather can only "show just grounds for recovering money to pay for some benefit" that Gerber has received from it, namely the payment of the common insureds' claims. *Id*. As the *Great-West* Court explained, "[i]n such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." *Id*. Because legal remedies are not available under § 502(a)(3), Claims III and IV fail as well.

Central States argues that several subsequent cases – *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), and *Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2723 (2014), eliminated the tracing requirement recognized in *Great-West* and permitted the assertion of equitable liens under § 502(a)(3) against third parties where authorized by the terms of a plan.

In *Sereboff*, Mid Atlantic, an ERISA fiduciary, sued to recover from the Marlene and Joel Sereboff medical expenses it had paid out on their behalf. The plan document – a contract between the Sereboffs and their ERISA plan, Mid Atlantic – "specifically identified a particular fund, distinct from the Sereboffs' general assets – '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" 547 U.S. at 364 (quoting plan terms). The plan documents also identified "a particular share of that fund to which Mid Atlantic was entitled: 'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'" *Id.* As a result, the Court held, even though the settlement funds

9

were not owned by the Sereboffs at the time of the contract, and had never belonged to Mid Atlantic, Mid Atlantic could "follow a portion of the recovery into the Sereboffs' hands as soon as the settlement fund was identified, and impose on that portion a constructive trust or equitable lien." *Id.* (internal quotation marks and alterations omitted).

*Sereboff* stands for the proposition that if the parties to a contract agree to the transfer of property, that agreement substitutes for the tracing requirement. The agreement is sufficient to identify the property or funds subject to a lien. This property then becomes recoverable in equity. Nothing in *Sereboff* indicated that the tracing requirements of *Great-West* were no longer in effect.

In *US Airways, Inc. v. McCutchen*, an ERISA plan asserted a claim to recover payments made when the beneficiary later received a tort settlement. The plan terms required "full reimbursement" of the expenses it had paid. In an effort to avoid repaying the plan, the beneficiary asserted two equitable defenses to full repayment: first, that the plan was entitled to no more than the amount he received from a third party to compensate for the loss that his plan covered, and second, that under the common fund doctrine, he could pass on a share of his lawyer's fees to U.S. Airways because it shared in the recovery. The Supreme Court held that these defenses were overridden by the terms of the plan requiring that reimbursement be "full," as the terms created "the modern-day equivalent of an equitable lien by agreement." *Id.* at 1546.

In *Thurber v. Aetna Life Insurance Co.*, an ERISA-governed welfare benefit plan sued to recover disability insurance payments to a beneficiary that were rendered overpayments when the beneficiary also received payment from a no-fault insurance provider. 712 F.3d at 656-57. As in *Great-West* and *Sereboff*, the plan terms provided for recovery of such overpayments. *Id.* at 657. We concluded that the plan's claim was equitable, even though the funds at issue were from alternative insurance rather than a third-party settlement, and even though recovery would be achieved out of the beneficiary's general assets

10

because the funds were never segregated and had dissipated.  Our holding rested on the "by agreement" nature of the equitable lien.  We reasoned that the plan terms constituted a contract between the parties that "put the beneficiary on notice that she would be required to reimburse [the plan]" and, therefore, protected the plan's right to recover the funds even though the beneficiary had spent them.  *Id.* at 663-64.  Once again, however, nothing in *Thurber* permitted the assertion of such liens against third parties.

From these cases, Central States advances three arguments:   (1) that the Supreme Court's focus on the terms of the plan in *Sereboff* and *McCutchen* render the plan terms equivalent to a constructive trust or equitable lien, or permit the assertion against a third-party of a lien by agreement authorized by the plan terms; (2) that Gerber is properly treated as a trustee of the funds claimed by Central States; and (3) that "courts have moved away from any tracing requirement, indicating that tracing identifiable funds is not essential to a claim for an equitable lien."

Central States is correct that the Supreme Court in *Sereboff* and *McCutchen*, and our court in *Thurber*, focused heavily on the terms of the plan, and in fact, permitted the terms of the plan to override certain rules of equity, including the strict tracing requirements normally applicable to equitable restitution.  Both courts did so, however, only because the plan terms constituted a contract between the parties involved in the lawsuit.  All three cases involved disputes between the plan and one of its beneficiaries.  None involved the assertion of claims against a third-party such as Gerber.

As the Fifth Circuit explained in rejecting the same argument raised by Central States here in another case it brought against a third party provider, "ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets."  *Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356, 365 (5th Cir. 2014).  This

11

conclusion follows from *McCutchen* in which the Supreme Court noted that plan terms have no special force or effect against third parties and that its decision simply amounted to "holding the parties to their mutual promises." 133 S. Ct. at 1546.

Central States also argues that we recognized in *Thurber* that "a party who takes possession of settlement funds with knowledge of a plan's lien, holds those funds in constructive trust for the benefit of the plan" and, therefore, that "by refusing to pay the medical bills of the Common Insureds, [Gerber] breached [its] fiduciary duties as [a] constructive trustee[]." Appellants' Br. 18. Central States then relies upon the Supreme Court's statement in *Amara* that "equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty" to support its claim for monetary relief. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011).

This argument fails because, as we recognized in *Thurber*, only a beneficiary who was party to an agreement with the plan and thus had taken on a duty to repay the funds to the plan, holds such funds in constructive trust for the plan. The agreement said nothing about third parties. In any event, Gerber did not "take[] possession of settlement funds with knowledge of a plan's lien." Appellants' Br. 18. In fact, it took possession of no funds. It merely contested its liability to pay the Common Insureds' claims.

Finally, Central States argues that courts have moved away from tracing requirements and they are no longer essential to a claim for an equitable lien. This argument proves too much. The case law is still clear that any relaxation of the tracing rules has been limited to the assertion of equitable liens by agreement (something Central States does not assert), a remedy that is distinct from equitable liens as a matter of restitution (which it does assert). *See Sereboff*, 547 U.S. at 364-65 ("[A]n equitable lien sought as a matter of restitution, and an equitable lien 'by agreement,' . . . [a]re different species of relief," and prior case law "confirms that no tracing requirement of the sort asserted by the Sereboffs

12

applies to equitable liens by agreement or assignment"); *Thurber*, 712 F.3d at 664 ("When an ERISA plan creates an equitable lien by agreement between the insurer and the beneficiary, the insurer's ownership of the overpaid funds is established regardless of whether the insurer can satisfy strict tracing rules. In the context of an equitable lien by agreement, rather than an equitable lien sought as a matter of restitution, all that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer.") (internal citations omitted).

Here, Central States' claims are classic legal ones. There is no equitable lien by agreement because there is no agreement between Central States and Gerber that "specifically identified a particular fund, distinct from [Gerber's] general assets" nor "a particular share of that fund to which [Central States] was entitled." *Sereboff*, 547 U.S. at 364. Absent such an agreement, Central States is, in effect, seeking compensation from Gerber's general assets in the amount of the Common Insureds' claims, not a right to title or possession of particular funds or property held by Gerber that were received from, or promised to Central States. As *Great-West* and its progeny teach, such relief is legal relief that is not available under §502(a)(3). 534 U.S. at 213-14.

### III. In the Circumstances Presented by This Case, ERISA Plans May Have No Remedy

The line of cases culminating in *Great-West* has been heavily criticized for unnecessarily reviving the historical division between law and equity, ignoring the background principles of trust remedy law against which Congress enacted ERISA, and adopting an unnecessarily narrow interpretation of § 502(a)(3) that excludes forms of relief Congress intended to make available under ERISA. Commentators have repeatedly noted that as a result of this case law ERISA plans and beneficiaries are, in some circumstances, deprived of remedies. *See, e.g.*, *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 222-23 (2004) (Ginsburg, J., concurring) (collecting cases); John H. Langbein, *What ERISA Means by*

13

*"Equitable": The Supreme Court's Trail of Error in* Russell, Mertens, *and* Great-West, 103 Colum. L. Rev. 1317 (2003); Judith Resnik, *Constricting Remedies: The Rehnquist Judiciary, Congress, and Federal Power*, 78 Ind. L.J. 223, 256-71 (2003); Tracy A. Thomas, *Justice Scalia Reinvents Restitution*, 36 Loy. L.A. L. Rev. 1063, 1081 (2003).

The circumstances of this case bolster such criticisms. Because Central States' claims are legal claims barred by thegwline of cases, if Central States' benefits are indeed secondary, it may well have no apparent venue in which to seek to recover the funds paid on behalf of the Common Insureds or similarly situated future claimants because all avenues of relief appear closed. Absent the involvement of an ERISA plan, claims between insurance companies over conflicting coordination of benefits provisions are normally raised and resolved in state courts. *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 577 (7th Cir. 1991) ("Nothing is more common than overlapping insurance coverage, and a common way in which disputes over which insurance carrier is liable to a particular claimant are resolved is by a suit for a declaratory judgment brought by one of the carriers against the other."). However, if one of the plans is an ERISA plan, such a claim may arguably be subject to ERISA's broad preemption provision.[2] Section 514(a) of ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *See* 29 U.S.C. § 1144(a).

Prior to the Supreme Court's limiting interpretation of "appropriate equitable relief" and its restriction of federal common law remedies, federal courts offered equitable and common law-based remedies to ERISA plans. For example, *Winstead v. Indiana Insurance Company*, 855 F.2d 430 (7th Cir. 1988), endorsed the district court's use of federal common law to apportion liability

---

[2] Central States avers that preemption is likely. The issue was raised in a previous suit brought by Central States over the same issue. There, the Northern District of Texas held any state law claims to be preempted. *Central States, Se. & Sw. Areas Health and Welfare Fund v. Health Special Risk, Inc., et al.*, No. 11-Civ.-2910-D, 2013 WL 2656159 at *4 (N.D. Tex. June 13, 2013) *aff'd*, 756 F.3d 356 (5th Cir. 2014). But preemption is not at issue in this appeal and we do not reach the issue.

14

between an ERISA and a non-ERISA plan. *Id.* at 434. As we have previously noted, that avenue is now closed. *See Gerosa v. Savasta & Co.*, 329 F.3d 317, 322-23 (2d Cir. 2003). There now appears to be no other provision of the civil remedies scheme in § 502 that offers relief to an ERISA plan in Central States' position.

Left with no option to recover payments made for its participants' convenience, but which may not be required under its coordination of benefits provision, Central States may be forced to deny those claims. Assuming that the other carrier also denies the claim, as happened here, a beneficiary, knowing he has coverage from one of the two carriers (for example, for a broken arm) and desiring to take advantage of the coverage, would be forced into the unenviable position of bringing suit against both carriers, thereby incurring the attendant costs and delays of protracted multi-party litigation. Such a claim might be brought under § 502(a)(1), which permits "'a participant or beneficiary' to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable." *Great-West*, 534 U.S. at 221 (quoting 29 U.S.C. § 1132(a)(1)(B)). In this way, a beneficiary might have a remedy, but under a process far more cumbersome, expensive and uncertain than if an insurer were able to pursue the claim.

The paradoxical result is that as an ERISA plan, Central States has fewer remedies than it would if it were a non-ERISA plan, and its beneficiary, through no fault of his own, is considerably worse off for having two policies that coincidentally had conflicting language than he would be if he had only one. One might think that the underlying purposes of ERISA and of equitable relief generally would permit a court to fashion an appropriate remedy. Indeed, the Supreme Court has noted recently that it is "a maxim of equity" that "'[e]quity suffers not a right to be without a remedy.'" *Amara*, 131 S. Ct. at 1879 (quoting R. Francis, Maxims of Equity 29 (1st Am. ed. 1823)). Similarly, Justice White, dissenting in *Mertens*, noted "the anomaly of interpreting ERISA so as to leave those Congress set out to protect--the participants in ERISA-governed plans and

15

their beneficiaries--with less protection than they enjoyed before ERISA was enacted." 508 U.S. at 267 (White, J., dissenting) (internal quotation marks and alteration omitted).

However, the Supreme Court has made its reading of § 502(a)(3) clear: "[i]t is . . . not our job to find reasons for what Congress has plainly done." *Great-West*, 534 U.S. at 217. "[E]ven assuming . . . that petitioners are correct about the pre-emption of previously available state-court actions or the lack of other means to obtain relief, vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Id.* at 220 (quoting *Mertens*, 508 U.S. at 261). Under these circumstances, even if that reading is one that we find problematical, we are bound to apply the law as interpreted by the Supreme Court, hoping that it (and that Congress) will revisit this tangled web sooner rather than later.

## CONCLUSION

To summarize, we hold that although Central States might well be left without an appropriate remedy as a result of this decision, and that in the future its beneficiaries may be put in the unfortunate position of having to sue their insurance companies to receive benefits to which they are indisputably entitled, the claims raised by Central States are legal, not equitable, and therefore may not be brought under § 502(a)(3). Accordingly, we **AFFIRM** the judgment of the District Court.